UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.

Case No. 09-20414

Hon. John Corbett O'Meara

JAMES WIESE, ILIR DOKAJ, and
TOM GJOKAJ,

    Defendants.

_____/

## OPINION AND ORDER

Before the court are several motions: (1) Defendants Gjokaj and Dokaj's motion for production of exculpatory evidence related to John Veraldi; (2) Gjokaj and Dokaj's motion for production of exculpatory evidence related to Patrick Bingaman; (3) Wiese's second motion for additional discovery; (4) Wiese's motion to dismiss Counts Two through Ten of the first superseding indictment; (5) Wiese's motion to dismiss Count Two as defective; and (6) Gjokaj and Dokaj's motion for a separate jury. The court heard oral argument on March 9, 2011.

## BACKGROUND FACTS

Defendants are charged with bank fraud, wire fraud, money laundering, and conspiracy related to a mortgage fraud scheme. Specifically, Defendants are charged with fraudulently obtaining $7.5 million in mortgage loans on twelve properties in Birmingham, Michigan. James Wiese built homes on the twelve sites; he then allegedly provided funds to a straw buyer, Tom Gjokaj. Gjokaj used those funds, some of which were funneled through Ilir Dokaj, as down payments on the twelve properties. Gjokaj obtained mortgage loans to purchase the properties, allegedly with no intention of repaying.

**LAW AND ANALYSIS**

**I.     Discovery Motions**

Defendants have filed three discovery motions requesting (1) exculpatory evidence related to mortgage brokers John Veraldi and Patrick Bingaman, and (2) additional discovery in general, including a government witness and exhibit list thirty days before trial, bank records, expert reports, witness statements, impeachment evidence, and any other physical evidence the government intends to use at trial.

The government responds that it knows of no evidence related to Veraldi or Bingaman that is exculpatory to Defendants, and that it does not intend to call Veraldi at trial, because he will assert his Fifth Amendment right not to incriminate himself.  The government further states that it has provided (1) all the loan documents in its possession for the properties at issue; and (2) copies of witness interview reports (FBI 302s), including Bingaman's (Veraldi declined to be interviewed by the FBI).  The government also notes that it is aware of its obligations regarding providing discovery to Defendants and that it will continue to comply.

The government does agree that it would be beneficial for the parties to exchange witness and exhibit lists thirty days prior to trial.  The court will order the mutual exchange of witness and exhibits lists by April 8, 2011, and otherwise deny Defendants' discovery motions.

**II.    Motions to Dismiss Counts of the Indictment**

   **A.     Defendants' Motion to Dismiss Counts Two through Ten**

Defendants argue that Counts Two through Ten of the First Superseding Indictment should be dismissed because these counts have not been properly pleaded.  An indictment is constitutionally sufficient "if it, first, contains the elements of the offense charged and fairly

informs a defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense." United States v. Maney, 226 F.3d 660, 663 (6th Cir. 2000) (quoting Hamling v. United States, 418 U.S. 87, 117 (1974)). "To be legally sufficient, the indictment must assert facts which in law constitute an offense; and which, if proved, would establish prima facie the defendant's commission of that crime." Id. (citations omitted). "Courts utilize a common sense construction in determining whether an indictment sufficiently informs a defendant of an offense." Id. (citations omitted).

Count Two of the First Superseding Indictment charges Defendants with bank fraud. Defendants contend that Count Two does not set forth all the prima facie elements of the crime, specifically a scheme to defraud, and does not specify the false pretenses or misrepresentations.

Counts Three through Nine allege seven counts of wire fraud. Again, Defendants contend that these counts do not allege a scheme to defraud or specify the false pretenses used in the scheme.

Count Ten charges Defendants with money laundering, alleging that Defendants engaged in monetary transactions in criminally derived property of a value of more than $10,000 from bank fraud and wire fraud. Defendants contend that the underlying counts, bank fraud and wire fraud, were not properly pleaded, as noted above.

The scheme to defraud is spelled out in detail in Count One (conspiracy to commit bank fraud, wire fraud, and money laundering). In that count, the government described each of the fraudulent mortgage loans Defendants are alleged to have obtained, including the addresses of the properties mortgaged, the amount of each loan, the title company, realtor, down payments,

amount of distribution to Defendants, and the closing dates of the loans.  The government also provided a detailed recitation of the "indicia of fraud" related to each loan.

Counts Two through Ten do not incorporate by reference Count One, but rather, incorporate only the "general allegations" of the indictment.  Defendants argue that Counts Two through Ten are deficient because they do not incorporate by reference Count One.  A common sense reading of the indictment, however, reveals that each count contains the essential elements of the charges and that Defendants have been fairly informed of the charges against which they must defend.  In particular, the same financial institutions referenced in Count One (conspiracy to commit bank fraud, wire fraud, and money laundering) are again referenced in Count Two (bank fraud).  The same fraudulently mortgaged properties described in Count One are again referenced in Counts Three through Ten.  The indictment contains abundant detail about the fraudulent scheme Defendants allegedly perpetrated.  The court finds that the First Superseding Indictment is not legally deficient and will deny Defendants' motion.

**B.     Motion to Dismiss Count Two or Strike Surplusage**

Defendants also argue that Count Two (bank fraud) should be dismissed as defective or the court should strike certain surplusage.  To prove bank fraud, the government must show that the defendant knowingly participated in a scheme, by means of false pretenses, to obtain money or credit from a federally insured institution.  See 18 U.S.C. § 1344; United States v. Goldsmith, 109 F.3d 715 (11th Cir. 1997).  Defendants contend that the four mortgage lenders (Taylor, Bean & Whitaker; Quicken Loans, American Bankers Conduit; and Accredited Home Lenders) who were responsible for eight of the twelve loans were *not* federally insured at the time the loans were processed and closed.

The government contends that regardless of who initially approves the loan, the money to fund the mortgage comes from a bank. According to the government, the funds that were disbursed at the closings on each of the twelve properties charged here were wire-transferred from federally insured financial institutions. This is sufficient to prove bank fraud. In United States v. Everett, 270 F.3d 986 (6th Cir. 2001), the defendant was convicted of bank fraud for forging signatures on business checks. On appeal, the defendant argued that she intended to defraud the business owner, not the bank. The Sixth Circuit affirmed the conviction, noting, "to have the specific intent required for bank fraud the defendant need not have put the bank at risk of loss in the usual sense or intended to do so. It is sufficient if the defendant in the course of committing fraud on *someone* causes a federally insured bank to transfer funds under its possession and control." Id. at 990-91 (emphasis in original). See also United States v. Paul, 57 Fed. Appx. 597 (6th Cir. 2003) ("If Dr. Paul was deemed to have participated in creating the fraudulent application that was subsequently relied upon by the Federal Bank to transfer funds in its possession and control to Dr. Paul, there is sufficient evidence of bank fraud.").

Defendants also contend that Count Two is defective because it is duplicitous; that is, it charges twelve separate bank frauds (separate loans) in one count. The government argues that, in cases where a common scheme or plan underlies aggregation into a single count, courts have found no defect in the charges, but rather a *benefit* to the defendant. See United States v. Margiotta, 646 F.2d 729, 733 (2d Cir. 1981) (discussing exposure to cumulative punishments by charging separate counts and finding that count should be found duplicitous "only when failure to do so risks unfairness to the defendant"). To the extent Defendants are concerned that the jury could come to a non-unanimous result on Count Two, the court will address that concern through

the appropriate curative instructions and in the verdict form.  The court will otherwise deny Defendants' motion to dismiss Count Two.

### III.      Gjokaj and Dokaj's Motion for Separate Jury from Wiese

Gjokaj and Dokaj have twice moved for severance from Wiese; the court denied both requests.  Now Gjokaj and Dokaj are requesting a separate jury from Wiese.  If the court were inclined to reconsider its decision on severance, it would be logistically easier and less confusing to have separate trials, rather than separate juries.  The court is not persuaded that reconsideration is warranted, however.

The basis for their severance argument is that the defendants have antagonistic defenses.  Gjokaj argues that his defense will be directly adverse to Wiese at trial; specifically, Gjokaj will argue that he did not possess the criminal intent necessary and that he was manipulated into participating in the mortgage fraud scheme by Wiese, a more sophisticated businessman.  Gjokaj's position will be that he was just an unsophisticated painting contractor who worked on Wiese's homes.  Gjokaj argues that he will need to question Wiese's character and challenge Wiese's statement to the FBI and that Wiese's counsel will object.  Although Gjokaj and Dokaj apparently want to take the stand, they are concerned about "further antagonism in the form of a vigilant cross-examination by Wiese's attorney."  Gjokaj fear this cross-examination would result in "convicting one defendant through the vigilant efforts of another defendant, a real risk in this case."

Rule 8(b) of the Federal Rules of Criminal Procedure permits the government to charge two or more defendants in an indictment "if they are alleged to have participated in the same act or transaction, or in the same series of acts or transactions constituting an offense or offenses."

Rule 14, however, permits relief from prejudicial joinder as follows:

> If the joinder of offenses and defendants in an indictment, an information, or a consolidation for trial appears to prejudice a defendant or the government, the court may order separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires.

The United States Supreme Court has advised that "a district court should grant a severance under Rule 14 only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence," and that "less drastic measures, such as limiting instructions, often will suffice to cure any risk of prejudice." Zafiro v. United States, 506 U.S. 534, 539 (1993). The Court noted that "[m]utually antagonistic defenses are not prejudicial *per se*. Moreover, Rule 14 does not require severance even if prejudice is shown; rather it leaves the tailoring of the relief to be granted, if any, to the district court's sound discretion." Id. at 538-39.

The court finds that a joint trial will not compromise a specific trial right of one of the defendants. Although Gjokaj will argue that Wiese duped him into participating in the scheme, such a position does not present a serious risk of undue prejudice. This case is distinguishable from United States v. Lopez, 915 F. Supp. 891 (E.D. Mich. 1996), upon which Gjokaj relies. In Lopez, the defendant submitted an *in camera* affidavit stating that her co-defendant, Cardona, had beaten her and forced her to assist him in a drug transaction. The court determined that the evidence she would adduce in her own defense would be "highly prejudicial evidence" of Cardona's bad character (physical abuse and coercion), which would not be admissible against him if he were tried alone. In this case, Gjokaj does not proffer similarly prejudicial evidence against Wiese. Any risk of prejudice may be cured with the appropriate jury instructions.

-7-

The court will deny Gjokaj and Dokaj's request for severance and/or separate juries.

## **ORDER**

IT IS HEREBY ORDERED that 1) Defendants Gjokaj and Dokaj's motion for production of exculpatory evidence related to John Veraldi [docket no. 89]; (2) Gjokaj and Dokaj's motion for production of exculpatory evidence related to Patrick Bingaman [docket no. 90]; (3) Wiese's second motion for additional discovery [docket no. 92]; (4) Wiese's motion to dismiss counts 2 through 10 of the first superseding indictment [docket no. 91]; (5) Wiese's motion to dismiss count 2 as defective [docket no. 93]; and (6) Gjokaj and Dokaj's motion for a separate jury [docket no. 102] are DENIED, consistent with this opinion and order.


Dated: April 1, 2011                              s/John Corbertt O'Meara
                                                  John Corbett O'Meara
                                                  United States District Judge

I hereby certify that the foregoing document was served upon counsel of record electronically and or by U.S. Postal mail on April 1, 2011.

                                                  s/Felicia Moses for Bill Barkholtz
                                                  Case Manager